UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERIC HORTON, | CASE NO. 2:22-cv-01838-BJR |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION TO REMAND |
| v. | |
| AMERICOOL HEATING & A/C LLC, et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff Eric Horton's Motion to Remand. Dkt. No. 15. For the reasons stated below, the Court grants Horton's motion and remands the case to King County Superior Court.[1]

### I.   BACKGROUND

**A.   Horton's State Court Lawsuit and Defendants' Removal to Federal Court**

From May to October 2022, Horton worked as a Heating, Ventilation, & Air Conditioning ("HVAC") technician for Defendant Americool Heating & A/C LLC ("Americool"). Dkt. No. 1-

---

[1] In light of this ruling, the Court does not reach Defendants' Motion for Partial Judgment on the Pleadings, Dkt. No. 16.

4 at 3. Americool is a Washington limited liability company that employs technicians out of locations in Centralia and Kennewick to install, maintain, and repair HVAC systems. *Id.*; *see* Dkt. No. 2 at 2. Defendants Lincoln Anderson and Norman Upson are co-owners of Americool and its president and vice president, respectively. Dkt. No. 1-4 at 3–4; Dkt. No. 2 at 1.

On November 17, 2022, Horton commenced this putative class action in King County Superior Court, alleging that by failing to provide rest breaks, meal breaks, and proper compensation required by Washington law, Defendants engaged in "a systemic scheme of wage and hour abuses against their installation and service technicians." Dkt. No. 1-4 at 2. Horton filed suit on behalf of himself and a proposed class of all individuals "who are or have been employed as installation or service technicians by Americool . . . in the state of Washington from November 17, 2019, through the date of final disposition of this action." *Id.* at 4. He avers that Americool failed to provide (1) paid ten-minute rest breaks for every four hours worked or ten minutes of additional pay for each missed rest break, *id.* at 7; (2) meal breaks after five consecutive hours worked and a second meal break during ten-hour days, or payment for each missed meal break, *id.* at 7–8; (3) compensation for off-the-clock work time, including preparatory work and meal breaks that were recorded but not received, *id.* at 8; and (4) overtime wages for travel time or missed breaks that when calculated, extended the work week beyond forty hours, *id.* at 9. In addition, Horton alleges that Americool improperly deducted wages for tools and supplies purchased by employees. *Id.* at 9–10.

Horton asserts six violations of Washington law. First, for failing to provide employees with rest breaks in violation of the Industrial Welfare Act, RCW § 49.12.020, and WAC 296-126-092 ("Count I"). *Id.* at 10. Second, for failing to provide meal periods in violation of the same statute and administrative code provision ("Count II"). *Id.* at 11. Third, for failing to pay wages in the amount required under the Minimum Wage Act, RCW 49.46.090 ("Count III"). *Id.* at 12.

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND - 2

Fourth, for failing to pay overtime wages in violation of RCW 49.46.130 ("Count IV"). *Id.* at 13. Fifth, for unlawful wage deductions in violation of the Wage Rebate Act, RCW 49.52.060, and WAC 296-126-028 ("Count V"). *Id.* at 14. And sixth, for the willful refusal to pay earned wages in violation of RCW 49.52.050 ("Count VI"). *Id.* at 14; *see also* Dkt. No. 15 at 8.

On December 29, 2022, Defendants timely removed the case to federal court. Dkt. No. 1 at 2. Defendants contend that this Court has subject matter jurisdiction over Horton's claims pursuant to 28 U.S.C. § 1331 because, although Horton alleges violations exclusively under state law, his claims arise under federal law. *Id.* at 3. Specifically, Defendants maintain that aside from his rest period claim comprising Count I, each of Horton's remaining five claims is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). *Id.* at 3–10. According to Defendants, those five claims are covered by or require interpretation of a collective bargaining agreement ("CBA") that governed the terms and conditions of Horton's employment during the relevant period. *Id* at 4.[2] Defendants also request that the Court exercise supplemental jurisdiction over Horton's rest period claim in Count I pursuant to 28 U.S.C. § 1367(a). *Id.* at 10.

**B.     Horton's Motion to Remand**

On January 30, 2023, Horton filed a motion to remand the case to King County Superior Court. Dkt. No. 15. In the motion, he concedes that his claim for meal period violations in Count II is preempted by Section 301 of the LMRA in light of the CBA provisions governing meal periods, and states that he agreed to dismiss this claim. *Id.* at 7 & n.1; *see* Dkt. No. 2-1 at 39, 45 (CBA provisions covering meal breaks); WAC 49.12.187 (permitting state statutory rules regarding "meal periods" for employees in construction trades to be "superseded by a collective

---

[2] Americool is a member of the Sheet Metal and Air Conditioning Contractors' National Association of Western Washington, which is part of the Inland Northwest Sheet Metal Contractors Association. Dkt. No. 2 at 2. Inland Northwest, in turn, is a party to a CBA with the Northwest Regional Council of SMART Local Union 55 that governed Horton's employment with Americool. *Id.*; *see* Dkt. No. 1 at 4, 6–7; Dkt. No. 2-1 at 2–63 (CBA).

bargaining agreement"). However, Horton argues that his "remaining claims—for failure to pay minimum and overtime wages in violation of the Minimum Wage Act, for unlawful deductions in violation of the Wage Rebate Act deduction regulations, and for willful refusal to pay wages in violation of the Wage Rebate Act—are . . . not preempted." Dkt. No. 15 at 7. Horton argues that such claims "are based on non-negotiable rights conferred by Washington state law, are independent of any rights given to [him] and class members under the collective bargaining agreement, and do not require interpretation of the agreement." *Id.*; *see also id.* at 18. Defendants oppose the motion. *See generally* Dkt. No. 22.

**C.      Defendants' Motion for Partial Judgment on the Pleadings**

On January 24, 2023, the parties met and conferred and stipulated to dismissal of Horton's meal period claim in Count II, as well as the portions of Counts IV and VI that arose from his meal period claim. Dkt. No. 16 at 9; *see* Dkt. No. 18 at 2 ("Plaintiff concedes that his second claim for relief is preempted under Section 301 of the LMRA. Plaintiff also concedes that as a result of this, he cannot pursue damages under his fourth and sixth claims for relief that are based on the second claim for relief."); Dkt. No. 21 at 7–8 (same); *see* Dkt. No. 1-4 at 11–15 (Counts II, IV, and VI requesting damages for missed meal breaks). The parties were unable to reach an agreement on whether Horton's claim in Count III for off-the-clock work performed as a result of being clocked out for an unused meal break was similarly preempted. Dkt. No. 18 at 2.

Thus, on February 16, 2023, Defendants filed a motion for partial judgment on the pleadings, requesting dismissal of Horton's request for "damages related to allegedly missed meal periods" in Count III. Dkt. No. 16 at 6, 14–15; *see* Dkt. No. 1-4 at 12. Defendants further argue that this claim should be dismissed because Horton did not exhaust the exclusive remedies provided to him in the CBA regarding meal periods, and that it should be dismissed with prejudice

because amendment would be futile. Dkt. No. 16 at 8, 15–17. Horton opposes the motion. *See generally* Dkt. No. 21.

## II. DISCUSSION

### A. Legal Standards

1. Removal under 28 U.S.C § 1441(a)

Except in certain cases, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Where diversity jurisdiction under 28 U.S.C. § 1332 is lacking, as is the case here, federal question jurisdiction under 28 U.S.C. § 1331 is required. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). This "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* In addition, "[u]nder the rule, removal must be based on the plaintiff's claims and cannot be based on a defendant's federal defense." *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 686 (9th Cir. 2022).

There is an exception to the well-pleaded complaint rule, though, in instances of complete preemption, often referred to as the "artful-pleading doctrine." This exception allows for "removal where federal law completely preempts a plaintiff's state-law claim, meaning that the pre-emptive force of the statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *City of Oakland v. BP PLC*, 969 F.3d 895, 905 (9th Cir. 2020) (quotations omitted). The Supreme Court has recognized that Section 301 of the LMRA is one such law, because it "displace[s] entirely any

state cause of action 'for violation of contracts between an employer and a labor organization[.]'" *Id.* (second alteration in original) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23, (1983)); *accord Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019).

Defendants bear the burden of establishing that removal is proper. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) ("If the district court at any time determines that it lacks jurisdiction over the removed action, it must remedy the improvident grant of removal by remanding the action to state court."). Courts strictly construe the removal statute against removal jurisdiction, with any doubts as to the right of removal weighing in favor of remand. *Moore-Thomas*, 553 F.3d at 1244.

2. Section 301 Preemption

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). Although it "contains no express language of preemption, the Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Curtis*, 913 F.3d at 1151 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)); *accord Livadas v. Bradshaw*, 512 U.S. 107, 121–22 (1994). Thus, "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar*, 482 U.S. at 394 (citations omitted).

Consistent with this Supreme Court precedent, the Ninth Circuit has developed a two-step inquiry for determining whether a claim is preempted. *See Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059–60 (9th Cir. 2007). First, "[d]oes the claim seek purely to vindicate a right or duty created by the CBA itself? If so, then the claim is preempted, and the analysis ends there." *Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union*, 23 F.4th 836, 841 (9th Cir. 2022); *see also Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 920–21 (9th Cir. 2018) (en banc) ("If a claim arises entirely from a right or duty of the CBA," then "the CBA is the only source of the right the plaintiff seeks to vindicate" and "there is no part of the claim in which the uniform body of federal labor law does not control the resolution of the parties' dispute." (cleaned up)). If not, courts "proceed to the second step and ask whether a plaintiff's state law right is substantially dependent on analysis of the CBA, which turns on whether the claim cannot be resolved by simply looking to versus interpreting the CBA." *Columbia Exp. Terminal*, 23 F.4th at 842. "Interpretation" in this context means something more than consideration, reference to, or application, and thus state law claims are only preempted at this second step "to the extent there is an active dispute over the meaning of contract terms" beyond some "hypothetical connection between the claim and the terms of the CBA" or a need for the court "to refer to the CBA and apply its plain or undisputed language[.]" *Schurke*, 898 F.3d at 921–22; *accord Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1033 (9th Cir. 2016).

The Ninth Circuit has also cautioned that "LMRA § 301 preemption [is] grounded in the need to protect the proper *forum* for resolving certain kinds of disputes (and, by extension, the substantive law applied thereto)." *Schurke*, 898 F.3d at 922 (emphasis in original); *see Dent v. Nat'l Football League*, 902 F.3d 1109, 1117 (9th Cir. 2018) (same). Therefore, this "inquiry is not an inquiry into the merits of a claim; it is an inquiry into the claim's 'legal character'—whatever its merits—so as to ensure it is decided in the proper forum." *Schurke*, 898 F.3d at 924 (quoting

*Livadas*, 512 U.S. at 123–24); *see id.* ("Our only job is to decide whether, as pleaded, the claim in this case is 'independent' of the CBA in the sense of 'independent' that matters for preemption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement." (cleaned up)).

B.     **Whether Horton's Claims Are Preempted by the LMRA**

As discussed above, Defendants acknowledge that Horton's rest period claim in Count I is not preempted under the LMRA because the CBA is silent on this issue. Similarly, Horton has agreed to dismiss his meal period claim in Count II and the corresponding portions of Counts IV and VI because the CBA supersedes any independent state law right regarding meal breaks. The Court therefore focuses its analysis on the disputed claims raised in Counts III, IV, V, and VI.

   1. <u>Horton's wage and hour claim in Count III does not seek purely to vindicate rights provided by the CBA</u>[3]

Defendants argue that Count III, for failure to compensate for all hours worked, is preempted at the first step of *Burnside*, because it is at bottom a claim for relief regarding meal periods. *Id.* at 8, 12–13.[4] Defendants attempt to characterize Count III as legally indistinguishable from Horton's meal period claim in Count II. The Court is unpersuaded. Unlike Count II, Count III does not "seek purely to vindicate a right or duty created by the CBA itself[.]" *Columbia Exp. Terminal*, 23 F.4th at 842; *see Kobold*, 832 F.3d at 1033 ("Only if the claim is founded directly on rights created by a collective-bargaining agreement does § 301 preempt it." (cleaned up)). To the contrary, the legal character of Horton's claim—asserting violations of Section 49.46.090 of Washington's Minimum Wage Act for Defendants' purported failure to pay employees the full

---

[3] Defendants do not dispute that Horton's wage and hour and unlawful deduction claims in Counts IV, V, and VI do not meet the first step of the *Burnside* test, as the CBA is not the only source of the rights that Horton seeks to vindicate in those claims, and therefore must be decided at the second step. Dkt. No. 22 at 13, 16, 18; *see infra,* § II.B.2.

[4] Defendants' argument as to Count III in their opposition to remand also forms the basis of their motion for partial judgment on the pleadings. *See* Dkt. No. 22 at 13; Dkt. No. 16 at 6–7, 9–10, 12–15.

amounts to which they were entitled—is entirely independent of Horton's rights under the CBA, even if he could have arguably filed a grievance arising from the same set of facts. *Livadas*, 512 U.S. at 123–24; *see also Schurke*, 898 F.3d at 921 ("[C]laims are not simply CBA disputes by another name, and so are not preempted under this first step, if they just refer to a CBA-defined right[.]"). The legal character of Count III is not automatically transformed by virtue of Horton's averment that Americool "violated the provisions of RCW 49.46.090 by failing to pay any wage whatsoever to Plaintiff and Class members for their missed rest and meal breaks." Dkt. No. 1-4 at 12; *see Schurke*, 898 F.3d at 928 ("The fact that 'a CBA provides a remedy or duty related to a situation that is *also* directly regulated by non-negotiable state law does not mean the employee is limited to a claim based on the CBA.'" (emphasis in original) (quoting *Humble v. Boeing Co.*, 305 F.3d 1004, 1009 (9th Cir. 2002))). Further, Defendants' citation to Section 49.12.187 of the Industrial Welfare Act is inapposite, as Horton's claim here arises under an entirely separate chapter of the Revised Code of Washington. Section 49.12.187 applies to "rules adopted under [the Industrial Welfare Act] regarding appropriate rest and meal periods," not rules under the Minimum Wage Act concerning proper compensation. RCW 49.12.187.

The Court finds that Horton's wage and hour claim in Count III does not exist solely as a result of the CBA, and instead, arises from non-negotiable rights conferred under Washington law. *See, e.g.*, *Stafford v. Key Mech. Co. of Wash.*, No. C21-5063-BHS-MLP, 2021 WL 2211287, at *3 (W.D. Wash. Apr. 27, 2021), *report and recommendation*, 2021 WL 2206496 (W.D. Wash. June 1, 2021). Accordingly, Defendants have failed to demonstrate that Count III is preempted under the first step of the *Burnside* test.

2. <u>Horton's wage and hour and unlawful deduction claims are not substantially dependent on interpretation of the CBA and are therefore not preempted under Section 301</u>

Turning to the second step of the *Burnside* test, the Court finds that Defendants have not identified an active dispute over the meaning of the CBA's terms, and have therefore failed to demonstrate that Horton's claims are preempted under the LMRA. Defendants maintain that Horton's remaining claims "are either grounded in, or inextricably intertwined with" the CBA, and that the Court will be required to interpret the CBA's "vague and ambiguous provisions." Dkt. No. 22 at 6. But Defendants offer little support for these assertions. They argue that Horton's claims are preempted because (1) the CBA "contains detailed provisions regarding wages, overtime wages, travel time, and hours of work, as well as provisions requiring employees to grieve and arbitrate all disputes arising out of interpretation and enforcement" of the CBA, *id.* at 14 (citations omitted); *see also* Dkt. No. 1 at 8; (2) relevant past practices are incorporated into the CBA as implied terms that must be examined and interpreted, Dkt. No. 22 at 16–17; Dkt No. 1 at 8; (3) the Court's calculation of any unpaid wages requires a factual analysis based on the CBA, Dkt. No. 22 at 17; Dkt. No. 1 at 8–9; (4) compensation for travel time necessitates interpretation of the CBA and past practices, Dkt. No. 22 at 17–18; Dkt. No. 1 at 9; and (5) the question of whether Defendants "willfully" withheld wages by operating in accordance with the CBA requires interpretation of the CBA and the parties' past practices, Dkt. No. 22 at 18; Dkt. No. 1 at 9. Defendants also cite to several sections of the CBA but do not explain *why* such provisions are ambiguous or require interpretation to resolve Horton's state law claims. *See* Dkt. No. 22 at 14 (citing Dkt. No. 2-1 at 9–10, 16–18, 24–25, 45–46); *see also* Dkt. No. 2 at 2.

Horton, on the other hand, contends that the question of whether Defendants paid him and proposed class members in accordance with Washington law, unlawfully deducted the cost of supplies from their wages, or willfully withheld wages "can be answered by simply looking to

employee time and payroll records and their testimony without resort to the provisions of the collective bargaining agreement." Dkt. No. 15 at 18; *see also* Dkt. No. 23 at 4–8.

The Court concludes that Defendants have failed to meet their burden of establishing federal-question jurisdiction. Counts III and IV in Horton's complaint raise minimum wage and overtime claims under Washington law. *See* Dkt. No. 1-4 at 12–13. That the CBA also contains provisions regarding wages, overtime compensation, travel time, and hours of work does not mandate preemption absent a "disagreement about the meaning or application of any relevant CBA-covered terms of employment." *Schurke*, 898 F.3d at 927. As in *Stafford*, Defendants here have "not demonstrated any of [their] cited [CBA] provisions are inherently ambiguous on their face," or that an examining court would need to do more than "look to" the CBA to determine the factual underpinnings of Horton's claims. 2021 WL 2211287, at *4 (citing *McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1011–12 (9th Cir. 2018)). Furthermore, with respect to the parties' past practices and the CBA's implied terms, "alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim: adjudication of the claim must require interpretation of a provision of the CBA." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691–92 (9th Cir. 2001) (en banc); *see Rogers v. Republic Servs., Inc.*, No. C18-1339-MJP, 2018 WL 6630041, at *3 (W.D. Wash. Dec. 19, 2018) ("Mere speculation that such a provision might exist will not defeat the motion for remand."). And Defendants' contention that the CBA may provide terms more favorable than Washington's statutory requirements, *see e.g.*, Dkt. No. 22 at 14–15, may go toward the merits of Horton's claims; but it does not provide a basis for the Court to find that such claims are preempted. *See Livadas*, 512 U.S. at 123–24; *Schurke*, 898 F.3d at 924; *see also, e.g.*, *Hisle v. Todd Pac. Shipyards Corp.*, 93 P.3d 108, 113–14 (Wash. 2004).

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND - 11

Defendants' argument that the Court's calculation of unpaid wages would require a factual analysis based on the CBA is similarly unavailing. "[T]he mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301." *Livadas*, 512 U.S. at 125; *see also, e.g.*, *Anderson v. Pac. Crane Maint. Co., L.P.*, No. 3:16-CV-05825-RJB, 2016 WL 6897813, at *2 (W.D. Wash. Nov. 23, 2016). Put another way, Defendants have not articulated why a court would need to interpret the terms of the CBA (as opposed to payroll records and testimony of Horton and any putative class members) to determine whether Defendants violated the minimum statutory requirements, and if they did, how much they would be liable for in damages.

As for Horton's unlawful deductions claim alleged in Count V, Horton argues that Defendants have not specifically responded to his arguments in favor of remand and therefore waived their right to do so. Dkt. No. 23 at 8 n.2; *see generally* Dkt. No. 22. Even assuming Defendants preserved their preemption argument as to Count V, they have nevertheless failed to establish that Horton's claim is substantially dependent on analysis of the CBA.

Last, the Court rejects Defendants' argument that it would be required to interpret the CBA's provisions and the parties' past practices for the purposes of resolving Horton's claim in Count VI regarding Defendants' willful refusal to pay wages under the Washington Rebate Act. Defendants may, of course, raise as a defense that their conduct comported with the terms of the CBA, but "defensive reliance on the terms of the CBA, mere consultation of the CBA's terms, or a speculative reliance on the CBA will not suffice to preempt a state law claim." *Humble*, 305 F.3d at 1008; *see also Caterpillar*, 482 U.S. at 399 ("[A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." (emphasis omitted)); *Cramer*, 255 F.3d at 691 ("If the claim is plainly based on state law, § 301

preemption is not mandated simply because the defendant refers to the CBA in mounting a defense.").

For the foregoing reasons, the Court concludes Section 301 preemption does not apply to Horton's wage and hour and unlawful deduction claims in Counts III, IV, V, and VI, as these claims do not involve rights existing solely because of the CBA and are not "substantially dependent" on an analysis of the CBA.

3. The Court declines to exercise supplemental jurisdiction over Horton's claims under 28 U.S.C. § 1367

In light of the above, and because Horton has agreed to voluntarily dismiss his preempted meal period claim, remand is warranted under 28 U.S.C § 1447(c) absent an exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Because the Court had federal-question jurisdiction over this action at the time of removal based on Horton's meal period claim in Count II, the Court has discretion to exercise supplemental jurisdiction over his remaining state law claims. *See Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991); *Wash. State Nurses Ass'n v. MultiCare Health Sys.*, No. C22-0321-LK, 2022 WL 3042013, at *3 (W.D. Wash. Aug. 2, 2022).

However, a district court's decision whether to exercise jurisdiction after every claim over which it had original jurisdiction is dismissed "is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see* 28 U.S.C. § 1367(c)(3). The Supreme Court has observed that "in the usual case in which all federal-law claims are eliminated before trial, the balance of the factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *accord Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th. Cir. 1997).

While the factors of convenience and fairness do not weigh heavily in either direction, considerations of judicial economy and comity counsel against exercising supplemental jurisdiction over Horton's remaining claims. First, this action is in its early stages and the Court has not invested substantial resources in the case. Horton moved for remand approximately thirty days after removal, and the Court has not evaluated or addressed the merits of Horton's claims or made any dispositive rulings. As a result, judicial economy weighs in favor of remand. In addition, Horton's remaining claims are all firmly grounded in and governed by Washington law, and the state court will be well suited to adjudicate Horton's claims. Therefore, comity also weighs in favor of remand. *See e.g.*, *Russ v. HNN Assocs. LLC*, No. 2:20-CV-1128-RSM-TLF, 2022 WL 17406338, at *2 (W.D. Wash. Nov. 14, 2022), *report and recommendation adopted*, 2022 WL 17403444 (W.D. Wash. Dec. 2, 2022).

For these reasons, the Court declines to exercise supplemental jurisdiction as a matter of discretion. *See* 28 U.S.C § 1367(c)(3).

### III.  CONCLUSION

For the reasons stated herein, the Court GRANTS Horton's motion to remand, Dkt. No. 15, and accordingly ORDERS that:

1. Pursuant to 28 U.S.C. § 1447(c), all further proceedings in this case are REMANDED to the Superior Court for King County in the State of Washington;

2. The Clerk of the Court shall mail a certified copy of this Order to the Clerk of the Court for the Superior Court for King County;

3. The Clerk of the Court shall also transmit the record herein to the Clerk of the Court for the Superior Court for King County, Washington; and

///

///

4. The Clerk of the Court shall terminate the motion pending at Docket No. 16 and CLOSE this case.

DATED this 1st day of May, 2023.

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND - 15